UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SHAWN DILLON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:23-CV-318-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| EBY-BROWN COMPANY, LLC, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Eby-Brown Company, LLC's Motion to Dismiss. [R. 9]. Plaintiff Shawn Dillon filed a Response [R. 10], and Eby-Brown filed a Reply [R. 11]. For the following reasons, Eby-Brown's Motion [R. 9] will be **DENIED**.

I.  Background

Dillon filed his Complaint on March 28, 2023, in Bullitt Circuit Court. *See* [R. 1-1]. Eby-Brown removed the action to this Court on the basis of diversity jurisdiction on June 22, 2023, *see* [R. 1], and soon thereafter, filed the instant Motion to Dismiss, *see* [R. 9]. The facts as stated here are drawn from Dillon's Complaint and are alleged to have occurred in Elizabethtown, Hardin County, Kentucky. *See* [R. 1-1, ¶ 4].

At the end of October 2021, Eby-Brown hired Dillon to work as one of its CDL licensed commercial full-time drivers working approximately 40 hours per week and earning a salary of approximately $28.00 per hour. *Id.* at ¶ 7. On April 15, 2022, Dillon "exercised his right . . . to not continue to deliver an unsafe load of cargo." *Id.* at ¶ 9. Dillon alleges that "[t]his was especially true if the cargo load was unsafe for the Plaintiff, his helper, and unsafe for the other drivers on the roadways in Kentucky." *Id.*

On April 25, 2022, "Defendant's supervisor, informed Plaintiff that Plaintiff was fired because the Plaintiff did not finish his route on April 15, 2022 when Plaintiff's delivery load was unsafe for Plaintiff (and the general public) for Plaintiff to continue to try to deliver the load." *Id.* at ¶ 8. Dillon was fired during a phone call, and when he asked the supervisor for the reason why he no longer worked for Eby-Brown, the supervisor responded, "Plaintiff did not fulfill his job duties with a couple of Clients of the Defendant and therefore, you [no] longer worker here." *Id.* at ¶ 12.

Through his Complaint, Dillon pleads one cause of action against Eby-Brown: wrongful termination in violation of public policy under Kentucky law. *See id.* at ¶ 5; [R. 1, ¶ 1]. Specifically, Dillon alleges that he was terminated because he "exercised his right conferred by well-established legislative enactment" evidenced by law for inspection of cargo, that the declared public policy of Kentucky "is that requiring truck drivers (or any motor vehicle operator for that matter) to break the law when operating a motor vehicle could have adverse consequences on the driver and general public at large," and "[t]hat driving a semi tractor trailer carrying cargo in an unsafe or illegal manner is one of the actions" the law "is trying to prevent." [R. 1-1, ¶¶ 13-14] (citing "KRS Chapter 189 *et seq.* and 601 KAR 1:005 *et seq.* that adopted 49 CFR §392 *et seq.* as expressed in 1950 Acts, Chapter 115, Section 5"). Read together, these allegations contend that Dillon was fired for refusing to violate traffic safety laws. As relief, Dillon seeks compensatory and punitive damages. *See id.* at ¶¶ 16-17.

On July 5, 2023, Eby-Brown filed its Motion to Dismiss. *See* [R. 9]. Dillon filed a Response [R. 10], and Eby-Brown filed a Reply [R. 11].[1]  Eby-Brown's Motion thus stands submitted for review.

---

[1] Dillon tried to file a Sur-Reply, but the Court struck that filing upon the motion of Eby-Brown. *See* [R. 12 (Sur-Reply)]; [R. 13 (Motion to Strike)]; [R. 14 (Order)]. Although Dillon alludes to amending his

**II.     Legal Standard**

Eby-Brown's Motion to Dismiss is based on Federal Rule of Civil Procedure 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Relatedly, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

**III.    Discussion**

Dillon's Complaint alleges only one claim against Eby-Brown: wrongful termination in violation of public policy under Kentucky law.[2] Generally, in Kentucky, "an at-will employee may be discharged 'for good cause, for no cause, or for a cause that some might view as morally

---

Complaint in his sur-reply filing, he has not filed a formal motion for leave to amend as required by the Federal Rules of Civil Procedure. *See Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647-48 (N.D. Ohio 2014) (explaining that a bare request for leave in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a proper motion for leave to amend under Rule 15).

[2] In his Response, Dillon cursorily asserts that he has raised "statutory" causes of action. *See* [R. 10, p. 1]. However, Dillon's Complaint only states one cause of action (common law wrongful discharge), and he cannot amend his Complaint through a Response to Eby-Brown's Motion. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). Instead, he must seek leave of Court to file an amended pleading. *See* Fed. R. Civ. P. 15(a).

indefensible.'" *Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 652 (Ky. 2019) (quoting *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)). However, there is a narrow public policy exception to the terminable-at-will doctrine, which is subject to the following limitations or constraints:

> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
>
> 2) That policy must be evidenced by a constitutional or statutory provision.
>
> 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.*

"Under the first constraint, Kentucky courts only recognize three circumstances in which a discharge is actionable under the public policy exception." *Clarke v. Amazon.com Servs. LLC*, No. CV 2:23-114-DCR, 2023 WL 7003220, at *2 (E.D. Ky. Oct. 24, 2023) (citing *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010)). "These circumstances are: (1) when there are explicit legislative statements prohibiting the discharge; (2) when the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of employment; or (3) when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *See id.* "In addition to satisfying one of those conditions, the public policy being invoked must have 'an employment-related nexus.'" *Id.* (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985)).

In this case, Dillon asserts that he was fired after refusing to deliver a load of cargo that he believed was unsafe and thus would have been unlawful under relevant transportation authorities. *See* [R. 1-1, ¶ 9] ("That on or about April 15, 2022, Plaintiff exercised his right conferred by well-established legislative enactment evidenced in KRS Chapter 189 *et seq.* and 601 KAR 1:005 *et*

*seq.* that adopted 49 CFR §392 *et seq.* to not continue to try to deliver an unsafe load of cargo."); *see also* [R. 1-1, p. 4 n.1] (citing "KRS 189.224 – Permitting unlawful operating of a motor vehicle prohibited") (emphasis omitted). Although Dillon at times parrots the language of the third circumstance ("right conferred by well-established legislative enactment") that would satisfy the first constraint of a wrongful discharge claim (demonstrating a well-defined public policy), the Court views the substance of his claim as alleging the second circumstance: that he was fired for refusing to violate the law. *See* [R. 10, p. 4] ("An employer cannot, therefore, order an employee to operate a vehicle that puts in peril the employee driver, employee helper, and general public at large. Firing such an employee who refuses to break the law is an actionable exception to the terminable-at-will doctrine as contrary to public policy."). Viewing Dillon's claim in such a manner, the court finds a recent opinion by Chief Judge Reeves of the Eastern District of Kentucky helpful for considering Eby-Brown's arguments seeking dismissal of Dillon's wrongful discharge claim. *Clarke*, 2023 WL 7003220, at *2.

In *Clarke*, the plaintiff alleged (relevant here) that he had been discharged contrary to public policy when he was fired for refusing to violate the law during his employment:

> As a Load Planner for Amazon, he allege[d] that he refused to exceed the weight limits on Amazon's airplanes, an act that would violate FAA regulation and Kentucky law declaring that:
>
>> No person shall operate any aircraft within the state in any form of navigation whatsoever in violation of the air traffic rules promulgated by the cabinet or the Federal Aviation Administration. For enforcement purposes, cabinet personnel shall have access at all reasonable times to appropriate books, records, and logs of any person operating aircraft in the state.
>
> KRS 183.100.

*Id.* Upon review, the court found that the plaintiff had sufficiently pled the first constraint of his wrongful discharge claim and, in doing so, rejected the defendant's argument that the plaintiff had

failed to demonstrate an employment-related nexus. *See id.* Specifically, the court relied on the Supreme Court of Kentucky's decision in *Greissman v. Rawlings and Associates, PLLC*, 571 S.W.3d 561 (Ky. 2019), and explained:

> *Greissman* dealt with an attorney who was terminated because she refused to sign a noncompete agreement, believing that it violated the Kentucky Rules of Professional Conduct. The Supreme Court of Kentucky's analysis referenced the employment-related nexus requirement but did not apply it "because the case dealt with a separate ground for establishing public policy—the alleged refusal to violate a law, . . . in the course of employment." *Marshall*, 575 S.W.3d at 655 (describing the Kentucky Supreme Court's analysis in *Greissman*). The employment-related nexus requirement is inherently satisfied under the second public policy exception because the refusal to violate the law occurred "in the course of employment." *See Hill*, 327 S.W.3d at 422. At least in this regard, Clarke's claim under the second public policy exception is sufficiently alleged.

*Clarke*, 2023 WL 7003220, at *2.

In this case, Dillon's claim, at its core, is based on the allegation that he was fired for refusing to violate state and federal law relating to traffic safety (KRS Chapter 189 *et seq.*, 601 KAR 1:005 *et seq.* that adopted 49 CFR § 392 *et seq.*, and KRS 189.224). *See* [R. 1-1, ¶ 9]. At this stage of the litigation, such allegations are sufficient to satisfy the first constraint of his wrongful discharge claim. *See Clarke*, 2023 WL 7003220, at *4 ("The Supreme Court of Kentucky has made clear that discharging an employee for refusal to violate a law is, by itself, 'so contrary to public policy as to be actionable as wrongful discharge.'") (citing *Hill*, 327 S.W.3d at 422). Indeed, such a conclusion is consistent with Kentucky cases like *Hill*, where the Supreme Court of Kentucky found the plaintiffs had adequately stated a claim when they alleged they had been fired for refusing to provide false testimony. *See Hill*, 327 S.W.3d at 422 ("We note further that discharging the employee for refusal to violate a law is one of the two situations we cited in *Grzyb* as being so contrary to public policy as to be actionable as wrongful discharge.").

Having found that Dillon has sufficiently pled the first constraint of his wrongful discharge claim, the Court moves on to consider whether he has adequately pled the second constraint, which requires a plaintiff to show that the policy is "evidenced by a constitutional or statutory provision." *Marshall*, 575 S.W.3d at 652. Unfortunately, cases regarding wrongful discharge claims under Kentucky law are not always models of clarity for how courts should approach the required showing under the second constraint.

On the one hand, certain case law suggests that a plaintiff who alleges he was fired for refusing to violate the law has sufficiently plead a claim based on that allegation alone and does not need to otherwise point to a specific constitutional or statutory provision that evidences a public policy that supports his claim. *See generally Greissman*, 571 S.W.3d at 566 ("To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by a constitutional or statutory provision, *or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment.*") (emphasis added). On the other hand, certain cases still proceed to discuss the source of the public policy relied upon by the plaintiff. *See Clarke*, 2023 WL 7003220, at *3.

*Clarke* is an example of the second approach. In that case, after concluding that the plaintiff had sufficiently pled the first constraint, the court moved on to consider the defendant's arguments that the statute relied upon by the plaintiff (KRS 183.100) could not "support a wrongful discharge claim because it does not assert an appropriate public policy (1) based on a Kentucky statute or constitutional provision and (2) it is not primarily directed at protecting employees in their employment situation." *See id.*

As to the defendant's first argument, the *Clarke* court explained that Kentucky courts have allowed wrongful discharge claims to proceed even when based on unspecified federal laws. *See*

*id.* (discussing *Mitchell v. Coldstream Laboratories, Inc.*, 337 S.W.3d 642 (Ky. Ct. App. 2010)). But, because the plaintiff relied on a Kentucky statute, the court went on to consider whether that statute "suffice[d] as an expositor of Kentucky public policy." *Id.*

To answer that question of law, the court looked to the relevant rulings of Kentucky courts and observed that at least one Kentucky trial court has found KRS 183.100 to be an appropriate statute to support a wrongful discharge claim. *See id.* ("Where a state's highest court has yet to render a determination regarding an underlying principle of state law, federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State.") (internal quotation marks omitted). Still, the court explained that regardless of whether the statute was supportive of such a claim, no statutory specificity was required to survive the pleadings stage. *Id.* at *3-4 (citing *Mitchell*, 337 S.W.3d at 646).

The court similarly rejected the defendant's other argument that the plaintiff had not shown the statute he relied upon was intended to protect him in his employment situation. *See id.* at *4. Instead, the court explained that "no such requirement exists under the second exception, where an employee is allegedly terminated for refusing to violate a law," and further noted that, "[i]f Amazon's contention were true, an employee terminated for refusing to commit theft may not have an actionable wrongful discharge claim because KRS 514.030 (theft by unlawful taking or disposition) is not directed at providing employee protection." *See id.* Rather than credit the anomalous position of the defendant, the court concluded "[t]he Supreme Court of Kentucky has made clear that discharging an employee for refusal to violate a law is, by itself, 'so contrary to public policy as to be actionable as wrongful discharge.'" *Id.* (citing *Hill*, 327 S.W.3d at 422).

In this case, as discussed above, because Dillon proceeds under a theory of having been fired for refusing to violate the law, it is not entirely clear whether he must otherwise point to a

specific constitutional or statutory provision that evidences a public policy that supports his claim. *See Greissman*, 571 S.W.3d at 566 ("To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by a constitutional or statutory provision, *or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment.*") (emphasis added). But even if he does, his pleading is sufficient.

For example, in his Complaint, Dillon relies, in part, on KRS 189.224 as supporting his claim. *See* [R. 1-1, p. 4 n.1]. That statute states in full: "It is unlawful for the owner, or any other person, employing or otherwise directing the operator of any vehicle, to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law." KRS 189.224. Clearly, this statute evidences a public policy under the laws of the Commonwealth in favor of public safety and in favor of not allowing vehicles to be operated in an unsafe manner on Kentucky roads. Thus, even if Dillon must adequately show policy evidenced by a constitutional or statutory provision, he has done so.

Eby-Brown's arguments to the contrary lack merit (just as the arguments of the defendant in *Clarke* were unpersuasive).[3] In this context, Dillon does not have to allege that any of the traffic laws evidence a public policy to protect him as an employee. *See Clarke*, 2023 WL 7003220, at *4 ("However, no such requirement exists under the second exception, where an employee is allegedly terminated for refusing to violate a law.") (citing *Greissman*, 571 S.W.3d at 566-67). Nor are the sources of law that Dillon has cited insufficient to support his wrongful discharge claim, as courts do not require exacting specificity at the pleading stage. *See id.* (citing *Mitchell*, 337 S.W.3d 642).

---

[3] At least one defense counsel in this matter also served as defense counsel in *Clarke*.

Also unavailing is Eby-Brown's argument (raised for the first time in its reply brief) that Dillon "ignores the long-standing law of Kentucky that an employee's 'refusal to violate a law in the course of employment' only states a wrongful discharge claim where the employer affirmatively orders the employee to violate the law."[4]  [R. 11, p. 5] (*citing Welsh v. Phoenix Transp. Servs.*, No. 2007-CA-001231-MR, 2009 WL 2475206 (Ky. Ct. App. Aug. 14, 2009)). Notably, case law suggests a wrongful discharge claim based on the second public policy exception can proceed when a plaintiff alleges *either* an affirmative request that he violate the law *or* that he would have become complicit in the illegal activity if he had continued in the course of his employment.  *See Clarke*, 2023 WL 7003220, at *5 (citing *Alexander v. Eagle Mfr. Co.*, 714 F. App'x 504 (6th Cir. 2017)).

In this case, Dillon alleges that he was fired for refusing to deliver an unsafe load of cargo (in violation of traffic safety laws), *see* [R. 1-1, ¶ 14], and the Court finds that these allegations are sufficient at the pleading stage to state a claim for wrongful discharge in violation of public policy under Kentucky law.  Whether Dillon will ultimately be able to prove his allegations, including whether any affirmative request was made, whether the delivery would have been in violation of any law, or whether he would have become "complicit" if he did not refuse to deliver the load, is a matter the parties can explore in discovery.  *See Clarke*, 2023 WL 7003220, at *5; *cf. Alexander*, 714 F. App'x at 509 ("In short, although his coworkers may have been engaging in illegal activity, Alexander, himself, was never affirmatively asked to violate the law, nor did his position make it

---

[4]  In another similarity between this case and *Clarke*, the defendant in that case also raised this argument for the first time in its reply.  *See Clarke*, 2023 WL 7003220, at *5 ("Reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Despite this principle, Amazon includes a new argument in its Reply: "a wrongful discharge case based on an alleged refusal to violate the law must include an allegation that the employer instructed the employee to violate the law, or otherwise forced the employee to be complicit in illegality." ) (cleaned up).

inevitable that he would be forced to do so."); *Malone v. Jefferson Cnty. Bd. of Educ.*, No. 2019-CA-1398-MR, 2021 WL 137762, at *7 (Ky. Ct. App. Jan. 15, 2021) ("Again, Malone cannot show that he had a reasonable, good faith belief that he had been asked to violate the law, at least not at the time of his resignation.").

Finally, the Court must address one other argument made by Eby-Brown. Through its briefing, Eby-Brown asks the Court to follow the rationale of an earlier decision in this District to find that Dillon's reliance on KRS 189.224 is insufficient as a matter of law. *See* [R. 9, p. 5] (citing *Jones v. Metal Mgmt. Nashville, LLC.*, No. 1:08-CV-102-R, 2009 WL 197427, at *1 (W.D. Ky. Jan. 26, 2009)). In *Jones*, the plaintiff was a truck driver who alleged that he was fired after refusing to make a drive when he was fatigued because the driver believed that it would have been "unlawful for him to make the drive since it would require him to exceed the number of hours a commercial driver was permitted to drive in a day." *Jones*, 2009 WL 197427, at *1. The plaintiff specifically "rest[ed] his claims of wrongful discharge on three Kentucky statutes," including (as is in this case) KRS 189.224. *Id.*

Upon review, the court granted the defendant's motion to dismiss, and specifically rejected the plaintiff's reliance on KRS 189.224 because the plaintiff had failed to articulate exactly what the public policy was under the statute. *Id.* at *5. The court explained that it "expresse[d] no opinion as to the public policy articulated by KRS § 189.224," but that having examined the limited case law, the court was "convinced that whatever the public policy of KRS § 189.224 is, it is not 'well-defined.'" *Id.* The court also relied on Kentucky case law's instruction that "important to a finding of wrongful discharge is the requirement that the public policy [be] directed at provi[di]ng statutory protection to the worker in his employment situation." *Id.* (citing *Shrout v. The TFE Grp.*, 161 S.W.3d 351, 354 (Ky. Ct. App. 2005)). Because the plaintiff in *Jones* had provided no

legal authority demonstrating the statute was meant to protect a worker from an employer who violates service hour limitations and had failed to articulate a well-defined public policy, the court found he had failed to state a claim for wrongful discharge under Kentucky law. *See id.*

In this case, the Court declines to follow the rationale of *Jones*. Notably, that decision is nearly fifteen years old and was issued prior to the Kentucky decisions relied on herein, which helped clarify the second public policy exception based upon the alleged refusal to violate the law. *See Hill*, 327 S.W.3d 412; *Mitchell*, 337 S.W.3d 642; *Greissman*, 571 S.W.3d 561; *Marshall*, 575 S.W.3d 650. Instead, the Court follows the rationale of *Clarke*, and the opinions of Kentucky courts, which demonstrate that Dillon's wrongful discharge claim should be permitted to proceed. Having found each of Eby-Brown's arguments to the contrary unpersuasive, the Court will deny Eby-Brown's Motion to Dismiss [R. 9].

### IV.     Conclusion

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant Eby-Brown Company, LLC's Motion to Dismiss **[R. 9]** is **DENIED**.

This the 29th day of November, 2023.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY